UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

WALID FARES LEWIZ LEYANI     :
KAMEL,
                             :
            Petitioner           CIVIL ACTION NO. 3:26-551
                             :
    v.                           (JUDGE MANNION)
                             :
CRAIG LOWE, *et al.*,
                             :
            Respondents

## MEMORANDUM

Pending before the court is petitioner Walid Fares Lewiz Leyani Kamel's petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Kamel's petition will be **GRANTED**.

## I.   BACKGROUND

Petitioner Walid Fares Lewiz Leyani Kamel is a citizen of Egypt. (Doc. 10-2 at 3). On September 18, 2024, Kamel illegally crossed the United States-Mexico border on foot near Sasabe, Arizona. *Id.* at 5. About eight minutes after crossing the border, Kamel was encountered by Border Patrol and taken into custody. *Id.* He has since been detained by the Department of Homeland Security ("DHS") under 8 U.S.C. §1225(b)(1) as a noncitizen subject to expedited removal under §235(b)(1) of the Immigration and Nationality Act ("INA"). *Id.* He is currently located at the Pike County

Correctional Facility in Lords Valley, Pennsylvania. He has no criminal history.

While in custody, on January 14, 2025, a Notice to Appear was issued, charging Kamel with removability under 8 U.S.C. §1182 as an alien present in the United States without being admitted and not in possession of valid documentation. (Doc. 10-3).

On September 19, 2025, Kamel was found removable, but granted asylum because of his status as a Coptic Christian who has suffered beatings, threats of torture, and attempts at forced conversion at the hands of extremist Muslims in Egypt. (Doc. 10-5); (Doc. 1, ¶¶ 9-11). During one attack, he and his wife were severely beaten to the point that his wife suffered a miscarriage. (Doc. 1, ¶ 11).

Despite being granted asylum, Kamel has remained detained pending the disposition of the Government's appeal of the asylum order to the Board of Immigration Appeals ("BIA"). (Doc. 10-6). Indeed, on December 17, 2025, ICE issued a decision, determining that "[e]xceptional circumstances and/or a legal requirement to detain exists warranting this decision to maintain you in ICE custody pending the outcome of the DHS appeal before the BIA." (Doc. 10-7).

On March 5, 2026, Kamel filed the present petition for a writ of habeas corpus, arguing that his continued detention violates the INA as well as the Fifth Amendment due process clause. (Doc. 1). On April 28, 2026, Respondents filed their response, arguing that he is properly detained under 8 U.S.C. §1225(b)(1). (Doc. 10). Finally, on May 12, 2026, Kamel filed a reply to their response. (Doc. 11). The petition is now ripe for disposition.

## II.   LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant a writ of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III.    DISCUSSION

### a.  Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition neither challenges the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred

- 4 -

by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion

- 5 -

exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Kamel is detained under 8 U.S.C. §1225(b), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission").

### c. 8 U.S.C. §1226(a) applies to Kamel

Kamel argues that his detention under §1225(b) violates the INA and his procedural due process rights because he has been granted asylum, and that he should, therefore, be released or provided with a bond hearing. Respondents, on the other hand, argue that Kamel was properly detained under 8 U.S.C. §1225(b)(1) and remains properly detained while DHS' appeal of the asylum order remains pending. While the court agrees that Kamel's detention was initially proper under §1225(b)(1), it disagrees that his detention remains under the provision following the asylum order.

Section 1225(b)(1) explicitly applies to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled."

- 6 -

Where a detainee was "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," he is treated as an arriving alien who was not admitted or paroled. *Castro v. United States Department of Homeland Security*, 835 F.3d 422, 425 (quoting 8 U.S.C. §1225(b)(1)(A)(i), (iii)). Section 1225(b)(1) explicitly applies to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Here, Kamel indisputably fell into that category. However, once he was granted asylum, his detention was no longer proper under §1225(b)(1) and instead converted §1226(a).

By way of analogy, courts nationwide, including this court, have been dealing with the issue of whether a noncitizen habeas petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 2026 WL 1146044, *2 (2d Cir. Apr. 28, 2025). In reaching this conclusion, the court noted that its "holding is consistent with

- 7 -

the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at *4. Recently, both the Sixth and Eleventh Circuits have ruled in line with the Second Circuit. *See Lopez-Campos v. Raycraft*, 2026 WL 1283891 (6th Cir. May 11, 2026); *see also Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 2026 WL 1243395 (11th Cir. May 6, 2026). The undersigned has consistently joined in this consensus interpretation.

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission'; (3) is 'seeking admission'; and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)).

The consensus view of the courts is that "seeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 2025 WL 3537279, at *5 (M.D.Pa. Dec. 10, 2025)); *see also Cunha*, 2026 WL 1146044 at *8 ("When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission *right now*, not one who sought

- 8 -

admission in the past but no longer is") (emphasis in original). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.* Furthermore, while the "entry fiction" doctrine "allows the government to treat physical entrants as if still 'on the threshold' if they are 'detained shortly after lawful entry' . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, 'aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Cunha*, 2026 WL 1146044 at *15 (emphasis in original).

While Kamel is detained pursuant to §1225(b)(1), this plain language analysis of §1225(b)(2) is instructive. Section 1225(b)(1) explicitly applies to "aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Kamel can no longer be deemed "arriving in the United States," nor can he be deemed "not admitted." His asylum application

- 9 -

was granted on September 19, 2025. (Doc. 10-5). He is now an asylee. In other words, he has been granted admission. The fact that the Government has appealed the asylum decision does not change that reality. At least for the time being, he is legally an asylee. If the Board of Immigration Appeals ("BIA") later reverses that determination (and the Circuit Court affirms the BIA), then he will no longer be an asylee. However, his asylee status is not nullified by a pending appeal.

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien; and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2).

Here, Kamel was properly detained under §1225(b)(1) until he was deemed an asylee. (Doc. 10-5). It defies the plain language of the statute to continue to consider him either as an "arriving alien" or as an "applicant for admission" as defined by §1225(b)(1). Accordingly, §1226(a) applies.

### d. Kamel's detention under 8 U.S.C. §1225(b) violates due process and warrants release

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law. U.S. Const. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Application of the factors reveals a clear violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention"—is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Kamel's erroneous detention under §1225(b) comes with a lack of procedural safeguards, including the opportunity for a bond hearing,

which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at \*2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely"). Third, while the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community," there is no such need here. *Quispe*, 2025 WL 3537279 at \*7 (citing *Zadvydas*, 533 U.S. at 690). Kamel has been granted asylum. An appeal of that decision is pending. Given that his ability to lawfully reside in the United States hangs in the balance, Kamel has a strong incentive to appear at future immigration proceedings. Moreover, reason dictates that an individual who fled his home country of Egypt and made the desperate attempt at crossing the United States-Mexico border on foot in order to escape potential death due to his religious beliefs needs no incentive to continue to appear at immigration proceedings and comply with any requirements imposed upon him. Furthermore, the circumstances of his coming to the United States are strong evidence that he is not a flight risk, and he has no criminal history. A finding that he is a danger to the community would be baseless. Thus, upon weighing of the *Mathews* factors, the court finds that Kamel's continued

- 12 -

detention under §1225(b) violates his procedural due process rights, warranting release.

The court also notes that even if Kamel is properly detained under §1225(b)(1), his detention still violates due process both for the same reasons as stated, and because his detention has become unreasonably prolonged and indefinite. He has been detained for approximately twenty months, including eight months after being granted asylum. The asylum appeals process may take years, and indefinite detention under these circumstances would violate due process. Moreover, ICE's December 17, 2025, decision determining that "[e]xceptional circumstances and/or a legal requirement to detain exists warranting this decision to maintain you in ICE custody pending the outcome of the DHS appeal before the BIA," (Doc. 10-7), is an internal policy determination premised on the faulty conclusion that Kamel's detention remains under §1225(b)(1). It is not binding on this court. Finally, the court notes that historically detainees were typically released from detention immediately following an order granting them asylum relief, even where an appeal occurred, unless exceptional circumstances dictated otherwise. *See e.g.*, Immigration and Customs Enforcement Memorandum, Feb. 20, 2004, https://www.ice.gov/doclib/foia/policy/memoDetPolicyAsylum ICE_Appealed_02.20.2004.pdf. ("In general, it is ICE policy to favor release

of aliens who have been granted protection relief by an immigration judge, absent exceptional concerns such as national security issues or danger to the community and absent any requirement under law to detain"). The court is not suggesting that internal ICE policies cannot change, nor that it can dictate such policies. Rather, the court notes this change simply to demonstrate its general lack of understanding as to why Kamel remains in detention.

### e. EAJA fees and costs

Kamel will be permitted to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of this judgment. *See Michelin v. Warden Moshannon Valley Correctional Center*, --F.4th--, 2026 WL 263483 (3d Cir. Feb. 2, 2026) (holding that a petition for a writ of habeas corpus from immigration detention under §2241 is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified").

### IV. CONCLUSION

For the foregoing reasons, Kamel's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be ordered to immediately release Kamel and will be permanently enjoined from re-detaining him under 8 U.S.C. §1225(b). Respondents will also be temporarily

enjoined from re-arresting Kamel for a period of 14 days to ensure that this habeas remedy is effective. If Respondents later detain Kamel under 8 U.S.C. §1226, they will be required to provide him with notice and, within 10 days, a bond hearing before an immigration judge, who shall provide an individualized assessment as to whether he poses a flight risk or a danger to the community. If Kamel is re-detained under §1226 and Respondents fail to schedule a timely bond hearing, he will be permitted to reopen this matter. Finally, Respondents will be directed to file a declaration or affidavit pursuant to 28 U.S.C. §1746 confirming that Kamel has been released from custody. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

DATE: 5/20/26

26-551-01

- 15 -